UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:

ROBERTO MELENDEZ,

    Plaintiff,

vs.

VOLUSIA COUNTY and ARMOR
CORRECTIONAL HEALTH SERVICES, INC.,

    Defendants.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Roberto Melendez, by and through his undersigned counsel, hereby sues Defendants Volusia County and Armor Correctional Health Services, Inc. and alleges the following:

## INTRODUCTION

1. This action alleges violations by Defendant Volusia County (through its agency, the Volusia County Sheriff's Office) and by Defendant Armor Correctional Health Services, Inc. under the Americans with Disabilities Act of 1990 ("ADA"), under Section 505 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), and under 42 U.S.C. 1983.

## JURISDICTION AND VENUE

2. Plaintiff is authorized to bring this action against Defendant Volusia County pursuant to Title II of the ADA, 42 U.S.C. §§12131-12133, incorporating by reference the remedies, procedures and rights under Sections 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§794, 794(a) ("Section 504"), incorporating the remedies, rights and procedures set forth in §717 of the Civil Rights Act of 1964, including application of §§706(f) through 706(k), 42 U.S.C. §2000e-5(f)-(k).

3. Plaintiff is authorized to bring this action against Defendant Armor Correctional Health

Services, Inc. pursuant to Title III of the ADA, 42 U.S.C. §§12181-12189, 28 U.S.C. § 1331, and 28 C.F.R. § 36.201.

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. §12188 and 42 U.S.C. 1983. This Court's jurisdiction is proper under 28 U.S.C. §§ 451, 1331, 1337 and 1343.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and the Internal Operating Procedures for the United States District Court for the Middle District of Florida in that events giving rise to the lawsuit occurred in Volusia County, Florida.

## PARTIES

6. Plaintiff, Robert Melendez is a veteran of the United States Armed Forces, is *sui juris* and is a resident of the State of Florida residing in Volusia County, Florida.

7. Plaintiff is a cancer survivor who suffers from PTSD, depressive disorder, a spinal cord injury[1] and is an incomplete paraplegic who is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. §3602, §802(h). Plaintiff's disability is defined in 28 C.F.R. §36.105(b)(2) and 28 C.F.R. §36.105(2)(iii) (D) and (K).

8. Defendant Volusia County is a body politic and operates as a county government within this district. Since Volusia County is a local governmental entity, it meets the definition of a public entity and is therefore subject to Title II of the ADA.

9. On information and belief, Defendant Volusia County is a distributor/recipient of federal funds and as such, is subject to the requirements of Sections 504 of the Rehabilitation Act.

---

[1] Autonomic Dysreflexia

10. Defendant Armor Correctional Health Services, Inc. ("Armor Health") is a Florida as a domestic for-profit corporation which operates under contract with correctional institutions to provide medical, dental and mental health services to patients in jails and prisons. At the time of the actions delineated herein, Armor Health was contracted by Volusia County to provided medical services at the Volusia County Sheriff's Office, which contract included administrating health care within Volusia County's jails to the inmate population.

11. Armor Health operates as a healthcare service provider and is subject to Title III of the ADA, 42 U.S.C. §§ 12181-12189 and, as related to its services to Volusia County, Section 504.

**FACTS**

12. At all times material hereto, the Volusia County Sheriff's Office ("Sheriff's Office") was (and remains) under the care, custody and control of Defendant Volusia County (also referenced as "Volusia County" or "County").

13. At all times material hereto, Armor Health's medical staff provided medical services on behalf of the Sheriff's Office to inmates incarcerated within the Sheriff's Office jail facilities.

14. In the afternoon of Thursday March 15, 2018, Sherriff's Office deputies responded to a domestic disturbance call[2] at the home of the Plaintiff.

15. When the Sherriff's Office deputies arrived on the scene, the domestic situation had deescalated and the parties were peaceful. (There was never a domestic violence incident. Plaintiff's wife was having a manic episode.) Plaintiff was cooperative, polite and told the deputies that he was a disabled veteran, and that he needed to take his medication because he was in pain.

16. Volusia County Division of Corrections Policy and Procedures Manual Policy Number 41.19.11 ("Policy 41.19.11") states that in instances in which there is probable cause to

---

[2] That call was made by Mrs. Melendez.

make an arrest for domestic violence but the deputy believes that immediate arrest is not the appropriate response, the deputy must notify his/her supervisor of this decision for approval. *Such circumstances might include the medical or mental condition of the suspect*.

17. Despite the deputies' prerogative to employ the provisions of Policy 41.19.11 and **not arrest** Plaintiff, the deputies placed the Plaintiff under arrest, cuffed him and sequestered him in the Sherriff's patrol vehicle that was parked in front of Plaintiff's home.

18. While being arrested and lead to the patrol vehicle, Plaintiff begged the arresting deputies to allow him to take his medication, to be provided his cane (in order to walk), and for his service animal accompany him.

19. Volusia County Division of Corrections Policy and Procedures Manual Policy Number 305.09 ("Policy 305.09") states that "no visitor or Inmate shall be denied benefits of any service, program or activity on the basis of a documented or perceived disability."

20. In derogation of Policy 305.09. the arresting deputies denied Plaintiff the ability to take his medication prior to their placing him under arrest and denied Plaintiff the use of his cane.

21. Policy 305.09 Procedure II (J)(1) states that service animals are permitted under Federal and State law. The arresting deputies did not follow Policy 305.09 (J)(2) by asking Plaintiff if his service animal was required due to Plaintiffs disability nor did they ask Plaintiff which tasks the service animal was required to perform for the Plaintiff.

22. Policy 305.09 Procedure II (J)(3) states that staff may not deny the service animal until they have received approval from the County's ADA Coordinator or designee. In derogation of the County's Policy 305.09 procedure, the arresting deputies refused Plaintiff to be accompanied by his service animal.

23. Plaintiff suffered a medical episode while in the back of the patrol vehicle and emergency responders were called by the Sheriff's deputies. The paramedic assessed Plaintiff, that the but did not take him to the hospital. Plaintiff was not given medication.

24. Sheriff deputies continued to deny Plaintiff the ability to take his medication when it was patently obvious that the Plaintiff was in pain and suffering despite Plaintiff's advising the deputies that he required the medications or suffer withdrawal symptoms and escalating excruciating pain.

25. After more than four hours of confinement in the Sheriff's patrol vehicle, Plaintiff was transported to the County jail where he was booked.

26. By the time Plaintiff was booked, he was nauseous and could barely walk due to the intense pain because he was not permitted to take his prescribed medication. Plaintiff informed the booking officers that he was a disabled veteran and required his prescribed medications, his cane and his service animal.

27. The booking officers did not accommodate Plaintiff for any of his needs as a disabled individual. They denied him access to his medication, his cane and the accompaniment of his service animal.

28. Plaintiff was permitted to call his family, which he did. In that call he explained that he had not received medical attention and that he was in severe pain.

29. Following booking, at approximately 6:47 PM, Plaintiff was examined by Armor Health staff. Plaintiff immediately informed Armor Health staff that he was disabled, suffered from PTSD, depressive disorder, Autonomic Dysreflexia due to a spinal cord injury, and that he had not been permitted to take his prescribed medications.

30. Plaintiff advised Armor Health staff that he had not yet taken his medication that day, and that, unless he received his medication, his pain level and symptoms of withdrawal would exhibit. In fact, Plaintiff was already suffering withdrawal symptoms.

31. Armor Health staff performed an incomplete intake health screening and noted that Plaintiff was suffering from detox/withdrawal but failed to state that Plaintiff had informed staff of his medical conditions and the fact that he needed to be administered his prescribed medications – all in deliberate indifference to Plaintiff's medical needs and disregard for the facts.

32. Instead of scheduling future health evaluations responsive to Plaintiff's disabilities and medical needs, Armor Health staff scheduled daily systematic detox checks, and put Plaintiff on suicide watch (presumably because he was in so much pain from not having his prescribed medications) and did nothing to treat Plaintiff for his medical needs which would have entailed providing the medication Plaintiff needed to control the pain associated with his disabilities. Plaintiff was incorrectly classified as a drug addict.

33. On the morning of March 15, 2018, Plaintiff's daughter contacted Dr. Reed, the Plaintiff's treating doctor at the Veterans Administration and alerted him to Plaintiff's situation. Due to Plaintiff's ailments Dr. Reed prescribed a complement of medications that included Oxycodone which, if reviewed by Armor Health, would have alerted them to the fact that Plaintiff was not abusing drugs despite having the presence of opioids in his blood. Dr. Reed immediately sent a list of Plaintiff's medications to the jail via fax in order that Plaintiff could receive the correct mediation in the correct doses.

34. Armor Health failed to acknowledge receipt of the fax from Dr. Reed (despite Plaintiff's daughter calling and alerting them to the fact that the fax had been sent) and failed and refused to treat Plaintiff for his medical needs in blatant disregard and indifference to for Plaintiff's

medical condition and disabilities and continued to notate in Plaintiff's file that he was suffering from substance withdrawal without indicating that Plaintiff had a valid prescription for Oxycodone.

35. For the duration of Plaintiff's incarceration, Armor Health refused to provide Plaintiff his prescription medications, refused Plaintiff's request for his service animal, and refused to treat Plaintiff for the pain he was experiencing due to Armor Health's failure to provide adequate medical care.

36. While Plaintiff was being transported from one location to the other, he was in considerable pain and his mobility impairment increased with each movement. In disregard for Plaintiff's health and wellbeing, the jail staff dragged Plaintiff through the halls without placing him in a wheelchair is derogation of Policy 305.09 Procedure II(D)(1)(a) ("inmates shall be afforded more time in transit or in programs due to a disability…") as well as 305.09 Procedure II (I)(3)[3] and (I)(5)[4] and with total disregard for the provision of reasonable accommodation of inmates on the basis of their disabilities (see generalized "Policy" statement). Other individuals who were incarcerated, were soliciting jail staff to come to Plaintiff's aid. Instead of aiding Plaintiff, these individuals were threatened.

37. At approximately 10:30 PM on March 16, 2018, Plaintiff was released into the care of his family who immediately transported him to the Veterans Administration hospital for medical attention and treatment.

38. The proximate cause of the aggravation of Plaintiff's PTSD was due to the failure of the Volusia County's Sheriff's office to consider Plaintiff's disabilities when initially arresting Plaintiff (as opposed to the alternative provided for domestic disturbances under Policy 41.19.11)

---

[3] "Officers shall ensure that when inmates are mobility impaired are cuffed or restrained, they are done so in manner which permits movement and mobility well-being …"
[4] regarding provision of wheelchairs

and then when at the jail, the failure of the Sheriff's office to accommodate Plaintiff for his disabilities as well as the failure of Armor Health to address Plaintiff's disabilities and his medical needs associated with those disabilities, despite having received independent verification of Plaintiff's condition from his medical provider (Dr. Reed) at the Veterans Administration medical center.

39. While Plaintiff has no intent to be arrested by the Volusia County Sherriff's Office in the near future, he has a well-grounded fear that he may be arrested in the future and will suffer similarly at the hands of Defendants' staff due to Defendants' systematic failure to adhere to their own policy guidelines regarding treatment of disabled individuals at Volusia County jail.

40. Plaintiff has retained J. Courtney Cunningham PLLC as his legal counsel in this action and has agreed to pay a reasonable attorney fee.

### COUNT I – VIOLATIONS OF TITLE II OF THE ADA AS TO DEFENDANT VOLUSIA COUNTY

41. Defendant Volusia County is subject to Title II of the ADA because 42 U.S.C. §12131(1)(b) states that a public entity includes any instrumentality of a state or local government. As such, Defendant Volusia County is required to accommodate disabled individuals. 42 U.S.C. §12131, *et. seq.*; 28 C.F.R. Part 35.

42. Title II of the ADA mandates that no qualified individual with a disability shall, by reason of such disability, be subjected to discrimination by any such entity; 42 U.S.C. §12132.

43. As a public entity, Defendant Volusia County may not (directly or through contractual or other arrangements, such as with Defendant Armor Health) utilize methods of administration that deny individuals with disabilities access to services, programs, and activities, or that perpetuate discrimination; 28 C.F.R. § 35.130(b)(3).

44. As a public entity and pursuant to Title II, Defendant Volusia County is required to make reasonable modifications in its policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity; 28 C.F.R. § 35.130(b)(7).

45. Defendant Volusia County has violated Title II of the ADA in numerous ways, including discriminatory action which occurred when the Defendant failed to apply Policy 41.19.1 to Plaintiff which, if applied would have avoided the trauma of arrest and the failure and refusal of Defendants' to accommodate Plaintiff for his disabilities. Volusia County also violated Title II by failing to accommodate Plaintiff for his disabilities by failing to follow its Policy 305.09. On information and belief, these violations are ongoing.

46. Defendant Volusia County, thorough it's Sheriff's Office, deprived Plaintiff of his prescription medications while he was in custody.

47. The Sheriff's Office had actual knowledge of the substantial likelihood that Plaintiff would suffer serious harm, including but not limited to withdraw symptoms, extreme pain, and degradation of Plaintiff's ability to perambulate if Plaintiff were deprived of his prescription medications.

48. In spite of its actual knowledge, the Sheriff's Office repeatedly failed to provide Plaintiff with his prescription medications. The decision to deprive Plaintiff of his prescription medications was made without a legitimate (or any) penological, medical or other non-discriminatory purpose.

49. Defendant Volusia County's failure amounts to deliberate indifference and intentional discrimination on the basis of Plaintiff's disability, in violation of the ADA.

50. Defendant Volusia County's decision to deprive Plaintiff of his prescription medications was arbitrary, capricious, and outrageous.

51. By failing to follow its own Policies and Procedures (specifically, Policy 305.09 and Policy 41.19.1) Defendant Volusia County has discriminated against Plaintiff based on his disability.

52. As a direct and proximate cause of Defendant Volusia County's intentional disability discrimination, Plaintiff suffered actual damages, including but not limited to physical bodily harm and severe emotional distress, which is ongoing to this day.

53. Because of the mental health issues suffered by Plaintiff and Plaintiff's wife, Plaintiff may be subject to detention and investigation by the Sherriff's Office in the future and has a well-grounded fear that he will be subject to the same failures and deliberate indifference as to his disabilities and medical condition unless enjoined by this Court.

WHEREFORE, Plaintiff Roberto Melendez demands judgment against Defendant Volusia County and prays the Court:

a) Award Plaintiff general and compensatory damages;

b) Award reasonable costs and attorneys' fees pursuant to 42 U.S.C. §1988; and

c) Award any and all other relief that may be necessary and appropriate.

### COUNT II – VIOLATIONS OF TITLE III OF THE ADA
### AS TO DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES, INC.

54. Because Armor Health operates health care provider offices, it must abide by the mandates of Title III of the ADA. *See* 28 C.F.R. §36.201(a).

55. Being a health care provider for the incarcerated public, Defendant Armor Health's medical facilities are (each) a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(F) and 28 C.F.R. Part 36.

56. By Armor Health staff's failure to accommodate Plaintiff for his disabilities during his period of incarceration at the Volusia County jail, Armor Health has failed to meet its obligation to accommodate disabled individuals within the purview of providing health care services to the inmate population within Volusia County's jail.

57. Under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II)), it is unlawful discrimination to fail to make reasonable modifications when such modifications are necessary to accommodate individuals with disabilities.

WHEREFORE, as a result of Armor Health's inadequate response to accommodate the medical needs of Plaintiff based on his disability, Plaintiff Roberto Melendez demands judgment against Defendant Armor Correctional Health Services, Inc. and prays the Court:

a) Award Plaintiff general and compensatory damages;

b) Award reasonable costs and attorneys' fees; and

c) Award any and all other relief that may be necessary and appropriate.

**COUNT III – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
AS TO DEFENDANTS VOLUSIA COUNTY AND
ARMOR CORRECTIONAL HEALTH SERVICES, INC.**

58. Plaintiff is an otherwise qualified individual with a disability under Section 504 of the Rehabilitation Act. As an otherwise qualified individual, Plaintiff is expressly authorized under Section 505 of the Rehabilitation Act which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 & 794(a), incorporating the remedies, rights and procedures set forth in Section 717 of the Civil Rights Act of 1964, including the application of §§ 706(f) - (k), 42 U.S.C. §§ 2000e (5)(f) - (k).

59. In *Nat'l Ass'n of Deaf v. State*, No. 18-cv-21232, 2018 WL 3722936, at *5 (S.D. Fla. June 18, 2018)(citing Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000) the court found that

"[t]he elements of a Title II claim and a section 504 Rehabilitation Act claim are the same," and can be addressed together.

60. On information and belief, Defendant Volusia County is a recipient of federal financial assistance and also distributes federal financial assistance through its budgetary and legislative activities. As the distributor of federal financial assistance, all of the operations of Volusia County are subject to the Rehabilitation Act as a covered program or activity. 29 U.S.C. §794(b)(1)(B).

61. Defendant Armor Health is a recipient of federal financial assistance through the funds it receives from Volusia County.

62. Section 504 of the Rehabilitation Act prohibits recipients of federal funding from discriminating against disabled persons and requires that programs or activities operated by a federally-funded entity be readily accessible to persons with disabilities; see 28 C.F.R. §42.520.

63. Section 504 of the Rehabilitation Act, 29 U.S.C. §794 requires that no otherwise qualified individual with a disability, on the basis of that disability, be denied the benefit of the services, programs, activities, or to otherwise be discriminated against.

64. Specifically, as related to violations of Section 504, a disabled individual who becomes incarcerated must not be denied benefits of any program, service or activities on the basis of a documented or perceived disability.

65. From the decision to arrest Plaintiff by Defendants Volusia County and from the first exam by Defendant Armor Health and up until his release from jail, Plaintiff was denied reasonable accommodation for his disabilities by Defendants Volusia County and Armor Health by their systematic failure to adhere to their own policies which had been put in place to avoid such discrimination in derogation of 45 C.F.R. §84.

66. By failing to accommodate Plaintiff for his disabilities, Defendants have jointly and severally discriminated against Plaintiff and as a result, Plaintiff has experienced shame, humiliation, emotional suffering, intense physical pain and emotional anguish in violation of his civil rights.

67. The failure of the Defendant to follow established policies, practices and procedures, particularly by the actions and omissions described above have violated Plaintiff's rights under Section 504 by discriminating on the basis of a disability.

68. Defendants' actions reflect Defendants' deliberate indifference to the rights of the Plaintiff based on Plaintiff's disabilities.

69. While in this instance Plaintiff repetitively requested accommodation from Defendants, no request for an accommodation is necessary to plead a claim for failure to accommodate where the need for such an accommodation is obvious. See *Wilson v. Broward Cty.*, No. 04-61068, 2006 WL 8431515, at *3 (S.D. Fla. Jan. 13, 2006)(denying a motion to dismiss in a Title II case where plaintiff claimed that his need for accommodation was obvious).

70. The ongoing and continuous act of failing to accommodate Plaintiff by administering medication to alleviate his pain and failing to allow the accompaniment of his service animal in blatant disregard for Volusia County's stated policies (which both the Sheriff's Office and Armor Health were duty bound to follow) goes beyond gross negligence. Thus, Defendants are in violation of Section 504 of the Rehabilitation Act. *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, (11th Cir. 2012). ("Deliberate indifference defined in the context as occurring when "the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood"[5]).

---

[5] the *Liese* court, quoting from *T.W. ex. rel. Wilson v. Sch. Bd of Seminole Cnty., Fla.*, 610 F.3d at 604 (11th Cir.2010); accord *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir.2009); *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228–29 (10th Cir.2009); *Duvall v. Cnty. Of Kitsap*, 260 F.3d 1124, 1139 (9th Cir.2001)

71. As a result of Defendants' actions, Plaintiff has been damaged and has suffered shame, humiliation, emotional suffering, intense physical pain and anguish.

72. Plaintiff is entitled to damages pursuant to Section 504 because of Defendants' deliberate indifference, despite Plaintiff's repeated request for accommodation.

WHEREFORE, as a result of Volusia County and Armor Health's inadequate response to accommodate the medical needs of Plaintiff based on his disability, Plaintiff Roberto Melendez demands judgment against Defendants Volusia County and Armor Correctional Health Services, Inc. jointly and severally, and prays the Court:

a) Declare that Defendants' failures to ensure that their staff and employees accommodate the needs of disabled individuals violate Section 504 of the Rehabilitation Act;

b) Award Plaintiff general damages and compensatory damages;

c) Award reasonable costs and attorneys' fees; and

d) Award any and all other relief that may be necessary and appropriate.

### COUNT IV – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS, 42 USC 1983 - AS TO DEFENDANTS VOLUSIA COUNTY AND ARMOR CORRECTIONAL HEALTH SERVICES, INC.

73. At all times material thereto, Plaintiff had an objectively serious medical need, to wit: prescription medications for his medical conditions.

74. Plaintiff initially, continually, and repeatedly put Defendants on knowledge as to his serious medical need, and Dr. Reed of the Veterans Administration affirmed and confirmed the medications which the Plaintiff needed for his medical conditions.

75. Defendants had knowledge that, without Plaintiff's prescription medications, there was a substantial likelihood that Plaintiff would suffer serious harm.

76. In spite of their actual knowledge thereof, Defendants deliberately disregarded Plaintiff's serious medical need for prescription medications.

77. In so doing, Defendants acted in a way that exceeded, or was worse than, gross negligence.

78. Defendants have violated Plaintiffs Fourteenth Amendment rights under color of state law.

79. As a direct and proximate cause thereof, Plaintiff suffered actual damages, including but not limited to physical bodily harm and severe emotional distress, which is ongoing to this day.

80. The conduct of Defendants was sufficiently outrageous so as to warrant an award of punitive damages.

WHEREFORE, as a result of Volusia County and Armor Health's inadequate response to accommodate the medical needs of Plaintiff based on his disability, Plaintiff Roberto Melendez demands judgment against Defendants Volusia County and Armor Correctional Health Services, Inc.. jointly and severally, and prays the Court:

a) Award Plaintiff general, compensatory and punitive damages;

b) Award reasonable costs and attorneys' fees (pursuant to 42 U.S.C. §1988); and

c) Award any and all other relief that may be necessary and appropriate.

Plaintiff demands a trial by jury on all issues so triable.

Dated this 16th day of March 2020.

>Respectfully submitted,
>
>*/s/ J. Courtney Cunningham*
>J. Courtney Cunningham, Esq.
>J. COURTNEY CUNNINGHAM, PLLC
>FBN: 628166
>8950 SW 74TH Court, Suite 2201
>Miami, Florida 33156
>Telephone: 305-351-2014
>Email: cc@cunninghampllc.com